IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KERRY SIMPSON, | ) | Case No. 3:18-cv-2723 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| NEIL TURNER, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Kerry Simpson, an Ohio prisoner serving a 15-year prison term after he was convicted of rape and compelling prostitution, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Simpson claims that his convictions and sentences in *State v. Simpson*, Lucas Cty. Ct. Comm. Pl. Case No. CR-15-2696, violated his constitutional rights.  ECF Doc. 1; ECF Doc. 1-1. Respondent, Warden Neil Turner, filed a return of writ on February 19, 2019.  ECF Doc. 8. Simpson filed his traverse on March 18, 2019.  ECF Doc. 9.  This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Simpson's petition.[1]  I recommend that Simpson's Ground One, Two, Three, and Five claims be dismissed as procedurally defaulted; that his Ground Four claim be denied as meritless; and that his petition for writ of habeas corpus (ECF Doc. 1) be DENIED.  I further recommend that Simpson not be granted a certificate of appealability.

---

[1] Chief Judge Patricia A. Gaughan also issued a differentiated case management initial order for administrative track cases reflecting the automatic order of reference.  ECF Doc. 3.

I.      **State Court History**

    A.      **State Trial Court, Case No. CR-15-2696**

On October 9, 2015, a Lucas County, Ohio, grand jury indicted Simpson on: one count of rape in violation of Ohio Rev. Code § 2907.02(B); one count of compelling prostitution in violation of Ohio Rev. Code § 2907.21(A)(1); and one count of promoting prostitution in violation of Ohio Rev. Code § 2907.22(A)(2).  ECF Doc. 8-1 at 3-4; *see also* Docket for Lucas County Ct. Comm. Pl. Case No. CR-15-2696, Indictment filed on October 9, 2015.  Specifically, the indictment alleged that Simpson had compelled a minor to have sex with him by force or threat of force; compelled a minor to engage in sexual activity for hire; and supervised, managed, or controlled the activities of a minor engaged in sexual activity for hire.  ECF Doc. 8-1 at 3-4. Simpson pleaded not guilty.  ECF Doc. 8-1 at 6.  The promoting-prostitution count was later dismissed on the state's motion.  ECF Doc. 8-1 at 7.

Simpson's trial began on May 23, 2016.  Docket for Lucas County Ct. Comm. Pl. Case No. CR-15-2696, Entry on May 23, 2016.  During the trial, the trial court instructed the jury that "[c]oerce means to compel by pressure, threat, or other means.  I'm not using force in that definition."  ECF Doc. 1-1 at 3 (citing (Tr. 292, 306)[2]).  Simpson's trial counsel did not object to that instruction.  ECF Doc. 1-1 at 3-4.  On May 25, 2016, the jury returned a verdict finding Simpson guilty of rape and compelling prostitution.  ECF Doc. 8-1 at 8.  On July 12, 2016, the

---

[2] The cited portion of the trial transcript and jury instructions do not appear in the record before this court. The warden noted that the transcript was not filed in order to protect the privacy interests of the then-minor victim, whose name was included without redaction in the trial record.  ECF Doc. 8 at 5.  And Simpson has not moved to expand the record to include the trial transcript or jury instructions.  *See generally* CM/ECF for N.D. Ohio Case No. 3:18-cv-2723.  Nevertheless, Warden Turner's return of writ appears to accept Simpson's recitation of facts regarding the court's "coerce" instruction and the lack of objection to that instruction.  *See* ECF Doc. 8 at 13-15 & n.4.  And, as discussed in Section V.A., *infra*, Simpson's claim for relief based on these instructions and the lack of objection to them is both procedurally defaulted and meritless.

trial court sentenced Simpson to an aggregate prison term of 15 years, to be followed by a

mandatory 5 years' post-release control.  ECF Doc. 8-1 at 9-10.

### B.  Direct Appeal, Appellate Case No. L-16-1175

On August 8, 2016, Simpson, through new counsel, filed a notice of appeal to the Ohio

Court of Appeals.  ECF Doc. 8-1 at 13.  Simpson's appellate brief raised one assignment of

error:

> Appellant's convictions were not supported by the manifest weight of the
> evidence.
>
> ISSUE PRESENTED FOR REVIEW AND ARGUMENT
> Where the testimony of a victim should not have been judged as credible based on
> the record, does a jury lose its way in finding otherwise?

ECF Doc. 8-1 at 19, 25-27.  Specifically, Simpson argued that the jury, inflamed by the nature of

the charges, lost its ability to fairly and properly judge the credibility of minor-victim J.W.'s

testimony – that Simpson prostituted J.W. and S.S. (another minor), supplied J.W. and S.S. with

crack cocaine, hit J.W. with a baseball bat after she called the police when S.S. overdosed, forced

J.W. to have anal sex with him before forcing her to go on a "date" with another man, and

threatened to kill or hurt her family after she ran away.  ECF Doc. 8-1 at 20-21, 26-27.  Simpson

asserted that the jury should have discounted J.W.'s testimony because: (1) J.W.'s testimony that

Simpson forced her to have anal sex conflicted with tests finding Simpson's DNA only in her

vagina, with her statements that her "date" wanted anal sex, and with medical records indicating

that the rape occurred at a different time than she had testified; (2) if she had been beaten with a

baseball bat, medical records would reflect greater injuries; and (3) J.W. admitted to hanging out

with Simpson *after* the rape.  ECF Doc. 8-1 at 25-26.[3]

---

[3] Shortly after Simpson filed his appellate brief, counsel on appeal withdrew and the Court of Appeals
appointed new counsel.  ECF Doc. 8-1 at 33-36.  After reviewing Simpson's appellate brief,

On January 26, 2016, the Ohio Court of Appeals affirmed Simpson's convictions and sentences.  ECF Doc. 8-1 at 62-70.  As a preliminary matter, the Court of Appeals noted that it could disregard Simpson's assignment of error because his appellate brief misstated the evidence in the record and did not include references to the transcript pages.  ECF Doc. 8-1 at 68.  Nevertheless, the Court of Appeals proceeded to consider Simpson's argument without accepting his version of the evidence.  ECF Doc. 8-1 at 68.

After exhaustively reviewing the trial evidence, the Court of Appeals held that "the jury did not clearly lose its way in weighing the evidence and determining the credibility of the witnesses.  The findings of guilt were not contrary to the manifest weight of evidence."  ECF Doc. 8-1 at 70.  Specifically, the court found that the rape charge was supported by: (1) J.W.'s testimony that Simpson beat her with a bat and forced her to have vaginal and anal sex with him; (2) photographs of her injuries from the hospital the day after the rape; and (2) a positive test for Simpson's DNA in a sample taken from J.W.'s vagina and inconclusive testing in a sample taken from J.W.'s anus.  ECF Doc. 8-1 at 68-69.  The court noted that the jury could have discounted J.W.'s credibility based on a date discrepancy in the hospital records and J.W.'s admission that she met up with Simpson years after the rape occurred, but it was the province of the jury to make that determination.  ECF Doc. 8-1 at 69.  The Court of Appeals also found that the compelling prostitution charge was supported by: (1) Simpson's admission that J.W. was a prostitute; (2) J.W.'s testimony that Simpson forced her to prostitute herself for drugs and out of fear; (3) S.S.'s and N.S.'s testimony that Simpson forced J.W. to prostitute herself; (4) the fact that Simpson was 40 (25 years older than J.W.); and (5) testimony that Simpson supplied J.W. with drugs, kept J.W. confined to his apartment except when she was out on a call, threated J.W.

newly-appointed appellate counsel determined that supplemental briefing was not necessary.  ECF Doc. 8-1 at 37-38.

with a belt, hit J.W., raped J.W., threatened J.W.'s family, and attempted to find J.W. after the charges against him were filed.  ECF Doc. 8-1 at 69-70.

### C.    Appeal to Ohio Supreme Court, Case No. 2018-0325

On March 2, 2018, Simpson, *pro se*, filed a notice of appeal to the Ohio Supreme Court. ECF Doc. 8-1 at 71-72.  Simpson's memorandum in support of jurisdiction asserted two propositions of law:

> Proposition of Law No. 1:  Appellant's convictions were not supported by the manifest weight of the evidence.  Where the testimony of a victim should not have been judged as credible based on the record, does a jury lose its way in finding otherwise?
>
> Proposition of Law No. 2:  Both court-appointed appellate attorneys representations were ineffective and fell below Constitutional standards by their deficient performance in failing to cite and reasonably argue the record on Appellant's first appeal of right in his sole assignment of error.

ECF Doc. 8-1 at 74, 76-77.  Despite listing a manifest-weight claim as Proposition of Law No. 1, however, Simpson's substantive argument focused only on the ineffective-assistance-of-appellate-counsel claim raised in Proposition of Law No. 2.  ECF Doc. 8-1 at 76-79.  On May 23, 2018, the Ohio Supreme Court declined to accept jurisdiction over Simpson's appeal.  ECF Doc. 8-1 at 91.

### D.    State Post-Conviction Petition, Case No. CR-15-2696

On January 10, 2018, while his direct appeal was pending, Simpson filed a "petition to vacate or set aside judgment of conviction or sentence."  ECF Doc. 8-1 at 92-95.  Simpson's petition raised a single ground for relief: that trial counsel rendered constitutionally ineffective assistance by failing to call witnesses that Simpson had asked counsel to call in his behalf.  ECF Doc. 8-1 at 93.  Simpson also indicated that he did not attach supporting evidence to his petition

and asked for appointment of counsel or an expert to assist him in collecting evidence to support his claim. ECF Doc. 8-1 at 93-95.

On April 16, 2018, the trial court denied Simpson's motions to appoint an expert or counsel and denied his petition for post-conviction relief. ECF Doc. 8-1 at 104-10. The court first determined that *res judicata* barred Simpson's ineffective-assistance-of-counsel claim because he could have presented the claim on direct appeal but did not. ECF Doc. 8-1 at 106-07 (noting that Simpson was present at his trial, cognizant of trial counsel's actions regarding witnesses, represented by new counsel on appeal, and cognizant of appellate counsel's actions). Further, the court determined that Simpson's ineffective-assistance-of-counsel claim would fail on the merits because: (1) the decision to call or not call witnesses is a matter of trial strategy; and (2) Simpson could not show that the failure to call witnesses prejudiced him because he merely provided a list of witnesses without explaining what evidence those witnesses would have provided. ECF Doc. 8-1 at 107-08.

Simpson did not file an appeal from the denial of his post-conviction petition. *See generally* Docket for Lucas County Ct. Comm. Pl. Case No. CR-15-2696 (no notice of appeal filed after order denying petition to vacate).

### E.    Application to Reopen Direct Appeal, Appellate Case No. CL-16-1175

On April 26, 2018, Simpson filed an Ohio App. Rule 26 application to reopen his direct appeal. ECF Doc. 8-1 at 112-20. Simpson's application to reopen indicated that he wished to raise two new claims before the Ohio Court of Appeals:

> First Assignment of Error
> Both court-appointed appellate attorney[s'] representation were ineffective and fell below constitutional standards by their deficient performance in failing to cite and reasonably argue the record on Appellant's first appeal of right in his sole assignment of error.

* * *

Second Assignment of Error
Defendant-Appellant asserts that his sentence is contrary to law and not supported
by the record in that the trial court erred in imposing the – longest prison term
without making the mandatory findings of fact and that the consecutive nature of
his sentence is contrary to law.

ECF Doc. 8-1 at 114, 118.

On June 14, 2018, the Ohio Court of Appeals denied Simpson's application to reopen his

direct appeal.  ECF Doc. 8-1 at 151-55.  The court determined that Simpson did not present a

colorable ineffective-assistance-of-appellate-counsel claim because, although appellate counsel

erred by failing to adequately cite the record, the error did not prejudice Simpson when the court

proceeded to consider all the evidence in the record and decided his claim on the merits.  ECF

Doc. 8-1 at 152-53.  The court also determined that Simpson's second assignment of error was

not colorable because the trial court had made the required statutory findings at sentencing.  ECF

Doc. 8-1 at 153-54.  Thus, the Ohio Court of Appeals denied Simpson's application to reopen his

direct appeal.  ECF Doc. 8-1 at 155.

Simpson did not appeal from the denial of his application to reopen.

## II.     Federal Habeas Petition

On November 26, 2018, Simpson filed his petition for writ of habeas corpus.  ECF Doc.

1.  Simpson's petition raises five grounds for relief:

GROUND ONE:  Petitioner was denied his 6th Amendment right to effective
assistance of counsel.  Trial counsel allowed prosecutor and victim to tell jury that
defendant hit victim with a baseball bat.

GROUND TWO:  The court instructed the jury that definition of 'coerce' did not
include force.  Defense counsel was ineffective for allowing this misdefinition
[*sic*] to happen.

**GROUND THREE:**  Evidence insufficient to prove that defendant had either vaginal or anal sex with the victim on the day in question.  Petitioner's 5th Amendment rights were violated.

**GROUND FOUR:**  Ineffective assistance of appellate counsel: failure to cite the trial record.

**GROUND FIVE:**  New evidence shows that state's witness Ms. Stewart was not truthful in her testimony.

ECF Doc. 1 at 5, 7-8; ECF Doc. 1-1 at 1-8.

## III.    Applicable Legal Standards

### A.    AEDPA Standard for Merits Review

A state prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), which established a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

When the claim presented in a habeas corpus petition **has** been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement. *Bobby v. Dixon*, 565 U.S. 23, 24, (2011) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).  This standard is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 50, (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

B.    **Procedural Default**

Before [a federal court may] reach the merits of a habeas petition, . . . [it must] review whether the petitioner has satisfied the [two] procedural requirements for litigating his federal claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. Sept. 16, 2019) (citing *Bickham v. Winn*, 888 F.3d 248, 250-51 (6th Cir. 2018), and *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)).  "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court before he may litigate that claim in federal court." *Id.* at 826. (noting that this requirement, rooted in the principles of comity and federalism, seeks to "avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation" (internal quotations and alterations omitted); 28 U.S.C. § 2254(b)(1)(A).  Here, the petitioner must have given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  Nevertheless, petitioners are only required to have pursued *available* remedies and are not required to pursue *clearly futile* state remedies.  *See Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").

"Second, and relatedly, the procedural default doctrine bars [federal habeas] review if the petitioner has not followed the state's procedural requirements for presenting his claim in state court." *Gerth*, 938 F.3d at 827.  Here, federal habeas review is barred when the petitioner failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the

10

merits of the petitioner's claim; or (2) fairly present the claim before the state courts while state remedies were still available. *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). To determine whether an Ohio procedural rule bars habeas review, courts in the Sixth Circuit apply a four-part test: (1) did the petitioner fail to comply with an Ohio procedural rule?; (2) do Ohio courts regularly enforce that rule?; (3) is the rule an adequate and independent state ground for denying review of a constitutional claim?; and (4) can the petitioner show cause and prejudice excusing the default? *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Williams v. Coyle*, 260 F.3d 684, 693; *see also Gerth*, 938 F.3d at 829-30 (holding that Ohio's *res judicata* doctrine is an adequate and independent state procedural ground that Ohio courts regularly apply).

When the respondent asserts that the petitioner failed to "fairly present" his claim in state court, the court looks to: (1) whether the petitioner failed to assert both the legal and factual basis for his claim through the state's ordinary review process; and (2) whether state law no longer allows the petitioner to raise his claim at the time he filed his federal habeas petition. *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848, and *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, the "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition." *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) (citing *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), *Scott v. Mitchell*, 209 F.3d 854, 865-68 (6th Cir. 2000), and *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985)).

Procedural default may be excused on two bases.  First, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) an external factor to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## IV.    Facts

Analysis of Simpson's petition begins with the facts recited in the Ohio Court of Appeals' opinion on direct appeal.  These factual findings are presumed correct unless Simpson rebuts them with clear and convincing evidence.  28 U.S.C. § 2254(c)(1); *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18.  The Ohio Court of Appeals found the following facts:

> **{¶4}**  At trial J.W., the victim, testified as follows.  In 2005, she was fifteen years old when she met appellant, whom J.W. knew was 40 years old, through S.S., an elementary school friend.  At that time, J.W. was addicted to crack cocaine, and appellant initially supplied her and S.S. with crack cocaine for free.  Later that

year, she moved in with appellant without her mother's knowledge.  Afterward, she did not feel free to leave because she wanted the drugs and was terrified of appellant.  He would not allow her to leave the apartment without supervision.

{¶5}  She recalled once when appellant became very angry at her and yanked her hair because she had used a neighbor's phone to report that S.S. had overdosed on drugs.  Appellant took her away while the police responded to the call because he was afraid he would get in trouble.  S.S. confirmed that she had once overdosed on drugs.

{¶6}  J.W. testified that appellant forced J.W. and S.S. to prostitute themselves at his apartment or on "dates" he arranged.  J.W. and S.S. were forced to give appellant the money they were paid and he supplied them with crack cocaine.  J.W. recalled numerous times when she refused to comply with appellant's demands or had not returned home soon enough after an encounter and he had hit her with his hands, a bat, or a belt.  She also saw him hit S.S. once and other women at the apartment numerous times.  Appellant would also force J.W. to hit S.S.

{¶7}  S.S., who was serving time for complicity to commit aggravated robbery and murder, also testified at trial-and confirmed J.W.'s testimony.  S.S. admitted she had been a 13-year-old runaway and met appellant when she purchased drugs from him.  She introduced J.W. to appellant, who supplied them with crack cocaine and later forced them to prostitute themselves and give him the money in order to get drugs.  S.S. further testified that while appellant would arrange sexual encounters or send S.S. out to find her own encounters, he never let J.W. leave the apartment alone.  He also made S.S. have sex with drug dealers four or five times in order to obtain crack cocaine.  S.S. complied with appellant's demands because she wanted a place to live and access to the drugs.  S.S. testified appellant forced her to have sex a few times and she saw him having sex with J.W. who appeared uncomfortable.  S.S. was afraid of appellant because she had seen him become violent and hit J.W. with his hand and a belt.  He also manipulated them into hitting each other to destroy their friendship.  S.S. also saw J.W.'s mother at the apartment using drugs with J.W. and appellant.

{¶8}  N.S., who had a prior conviction for making a false statement relating to her drug use in 2005, testified that she used crack cocaine at appellant's house in 2005 and sometimes slept there.  She confirmed J.W. lived at the apartment and usually hid in the bedroom.  N.S. saw J.W. use crack cocaine at the apartment and saw J.W. leave the house four or five times and return with money she gave appellant.  N.S. also saw appellant implicitly threaten J.W. and other girls by wearing a belt around his neck and giving them a look.  She saw one girl who had been beaten, but did not know who had beat her.

{¶9}  J.W. admitted that she had consensual sex with appellant but sometimes had complied to avoid being hit or because he forced her.  She recalled the turning

13

point event that led to her escape from appellant.  On the evening of September 9, 2005, appellant became angry and beat her repeatedly with a bat because he thought she had not properly responded to his friend.  She recalled deciding that night that she had to get away from him.  The next morning, appellant wanted J.W. to have sex with him and when she objected, he told her that she would do whatever he told her to do.  He forced to have vaginal and anal sex with him, causing her pain and injury and to become hysterical. Afterward, he sent her out with a man who also wanted to have anal sex.  She jumped out of the car and ran to her grandmother's home before going to a hospital, where she stayed until being discharged the following day.

{¶10}  J.W.'s medical records were introduced into evidence.  An analysis of the rape kit was analyzed by the Bureau of Criminal Investigations ("BCI").  The BCI found DNA from a vaginal swab that indicated a match to appellant's DNA at a ratio of 1:536,800 people.  While the DNA taken from a fabric sample and an anal swab indicated the presence of a male's DNA, there was insufficient genetic material to identify or exclude a particular source.  Photographs of J.W.'s bruising were also admitted, which J.W. testified were caused by being hit with the bat. The records also documented numerous vaginal and anal tears.  The assault history completed at the hospital indicated that the assault had occurred at 5:30 p.m. on September 10, 2005, but the report was prepared at 2330 hours on September 10, 2005.  An officer who was called to investigate the matter testified that she took J.W.'s statement that day and took possession of the rape kit, which was secured in the policy department's property room.

{¶11}  J.W. testified she did not return to appellant after these events, but she would not cooperate with the prosecution of appellant at that time because she was afraid of him.  She asserted she returned home to live with her mother who had met appellant once.  Appellant had previously threatened to kill her family if she did not return from her prostitution calls.  J.W. also testified she never spoke to S.S. again and saw appellant once four years later.  S.S. also testified that she saw J. W. several times after S.S. recovered from overdosing and met appellant through J.W. a few times and hung out with appellant at a club once.  S.S. did not clarify the time period when these meetings occurred.

{¶12}  The Toledo police detective began his investigation of the case in early 2015 with an untested rape kit obtained from J.W. in .2005.  He spoke with the victim and other witnesses.  J.W. testified that she finally agreed to cooperate with the prosecution in 2015 to prevent another girl from being harmed by appellant. The detective identified appellant as the suspect and found him in Mississippi. After appellant was brought back to Toledo, the detective interviewed appellant and obtained DNA evidence from him.  He denied the rape accusation, but admitted only to having had vaginal sex with J. W., without knowledge of her age.  Initially, he denied prostitution was occurring out of his apartment, but he later admitted J.W. and the other women were prostitutes who paid their own way.

**{¶13}**  The detective also testified that he listened to appellant's telephone conversation while he was held in custody.  In a three-way call appellant made to keep the phone number private, he spoke to '"Mike" and inquired about Mike's ability to locate J.W. at area women's shelters.  The detective testified defendants sometimes attempt to intimidate or pay-off victims to get them to drop their allegations.  A recording of the call was played for the jury.

ECF Doc. 8-1 at 63-67.

## V.  Analysis

### A.  Grounds One and Two

Simpson's Ground One and Ground Two claims both allege that trial counsel's representation was constitutionally ineffective, in violation of Simpson's rights under the Sixth Amendment, as extended to the states under the Fourteenth Amendment.  ECF Doc. 1 at 5, 7; ECF Doc. 1-1 at 1-4.  In Ground One, Simpson argues that trial counsel was ineffective because he "allowed prosecutor and victim to tell jury that defendant hit victim with a baseball bat."  ECF Doc. 1 at 5.  Simpson asserts that he actually hit J.W. with a plastic wiffleball bat, and the testimony that Simpson hit her with a baseball bat prejudicially misled the jury into believing that he hit her with a deadly weapon.  ECF Doc. 1-1 at 1-3.  Simpson contends that counsel should have clarified the difference for the jury.  ECF Doc. 9 at 2.  In Ground Two, Simpson argues that counsel was ineffective because he allowed the trial court to expansively define "coerce" to include "compulsion without using force."  ECF Doc. 1 at 7; ECF Doc. 1-1 at 3-4. He asserts that this definition impermissibly allowed the jury to find that he committed a rape under Ohio Rev. Code § 2907.02(A)(2) based on coercion without force, when the statute requires a showing of "force or threat of force."  ECF Doc. 1-1 at 4.

Warden Turner responds that Simpson's Ground One and Ground Two claims are procedurally defaulted.  ECF Doc. 8 at 13-15.  Warden Turner argues that Simpson could have

raised his ineffective-assistance-of-trial-counsel claims on direct appeal because the facts upon which they were based were in the trial court record and Simpson was represented by new counsel on appeal.  ECF Doc. 8 at 13-14.  Nevertheless, Simpson did not raise the claims on direct appeal to the Ohio Court of Appeals or in his post-conviction petition.  ECF Doc. 8 at 13-14.  Further, Warden Turner asserts that Simpson cannot overcome the procedurally default of his Ground One and Ground Two claims because: (1) he has not identified any cause external to the defense that impeded his efforts to present the claims on appeal; and (2) he cannot show he was prejudiced because he has not shown that his convictions would have been reversed had he presented his claims on appeal.  ECF Doc. 8 at 13-14.[4]  Warden Turner also asserts that Simpson's Ground One and Ground Two claims would fail on the merits.  ECF Doc. 8 at 29-34.

## 1.    Procedural Default

Warden Turner correctly argues that Simpson's Ground One and Ground Two claims are procedurally defaulted because he failed to raise them before the Ohio Court of Appeals and Ohio Supreme Court while state remedies were available.  *Gerth*, 938 F.3d at 826; *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  Here, Simpson denied the state courts the opportunity to resolve his ineffective-assistance-of-counsel claims because he did not raise them on direct appeal to the Ohio Court of Appeals or on appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 19-27, 74-79.  Simpson also did not raise the Ground

---

[4] In a footnote, Warden Turner also asserted that even if Simpson's Ground Two claim were liberally construed to raise a freestanding challenge to the court's jury instructions, that challenge would also be procedurally defaulted because: (1) trial counsel did not make a contemporaneous objection to the coercion instruction; and (2) Simpson did not challenge the instruction on appeal.  ECF Doc. 8 at 13-14 n.4.  Warden Turner is correct that the failure to raise a contemporaneous objection precludes Ohio appellate courts from reviewing a challenge on the merits and results in procedural default of the claim. *See Keith v. Mitchell*, 455 F.3d 662, 673-74 (2006) (Ohio Supreme Court's plain error review of an issue to which trial counsel did not raise an objection at trial was not merits review and did not waive procedural default rules).  Thus, we need not construe Simpson's petition to raise a freestanding claim challenging the court's jury instructions.

16

One and Ground Two claims in his unsuccessful Ohio App. R. 26(B) application to reopen his appeal. ECF Doc. 8-1 at 114-18.  Further, because Simpson's claims do not rely on new evidence outside of the trial record and because he was represented by new counsel on appeal, Simpson was required to raise the ineffective assistance of trial counsel issue embodied in his Ground One and Ground Two claims on direct appeal; having failed to do so, *res judicata* precluded him from presenting it to the Ohio courts in a collateral proceeding. *Cole*, 2 Ohio St. 3d at 114-15.  Thus, because Simpson failed to fairly present his Ground One and Ground Two claims, and because Ohio law no longer allows him to raise those claims, Simpson's Ground One and Ground Two claims are procedurally defaulted. *Gerth*, 938 F.3d at 826; *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.

Simpson does not argue that some factor beyond his control prevented him from raising his ineffective-assistance-of-trial-counsel claims on direct appeal to the Ohio Court of Appeals or the Ohio Supreme Court, or that there will be a fundamental miscarriage of justice if his ineffective-assistance-of-trial-counsel claims are not considered. *See generally* ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 9.  And any argument that appellate counsel's failure to raise those claims provided good cause to overcome procedural default would be unavailing because Simpson did not "fairly present" *that* argument in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (holding that, if a petitioner asserts ineffective assistance of appellate counsel as "cause" for his failure to "fairly present" his claim to state courts, he must have first presented the ineffective-assistance claim to the state courts before a federal court can address the substantive claim).  Moreover, Simpson has not produced any new, reliable evidence not presented at trial demonstrating that he is factually innocent and that a fundamental miscarriage of justice would occur if this court does not entertain his ineffective-assistance-of-trial-counsel

17

claims.[5]  *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324; *see generally* ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 9.  Therefore, Simpson has not overcome the procedural default of his Ground One and Ground Two claims.

Because Simpson cannot overcome the procedural default of his Ground One and Ground Two claims, I recommend that the claims be dismissed as procedurally defaulted.  Accordingly, the Court need not reach the merits of Simpson's Ground One and Ground Two claims.

### 2.    Merits

Even if Simpson's Ground One and Ground Two claims were not procedurally defaulted, they would nevertheless fail if the court conducted a merits analysis.  The Sixth and Fourteenth Amendments guarantee criminal defendants the right to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged from the benefit of hindsight.").  To establish that counsel's representation was constitutionally ineffective, a habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that he did function as "counsel" guaranteed by the Sixth Amendment; and (2) "the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687-88.  This standard is highly deferential, and the petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  A court must assess counsel's performance within the context of the

---

[5] To the extent Simpson's Ground Five claim could be construed as pointing to "new evidence" that could support his Ground Three claim, that evidence would be insufficient to overcome Simpson's procedural default.  *See* ECF Doc. 1-1 at 7-8; ECF Doc. 1-2.  At most, the letter from S.S. might be impeachment evidence that could be used to discount J.W.'s testimony, but impeachment evidence is not evidence of actual innocence.  *In re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001) (citing *Clark v. Lewis*, 1 F.3d 814, 824 (9th Cir. 1993)).

circumstances at the time the alleged errors occurred. *Id.* at 690; *Cobb v. Perini*, 832 F.2d 342, 347 (6th Cir. 1987). To satisfy the "prejudice" prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."), cert. denied, 495 U.S. 961 (1990).

### a.     Baseball Bat Testimony

Simpson has not shown that trial counsel rendered constitutionally ineffective assistance by failing to: (1) object to J.W.'s testimony and the prosecutor's statements that Simpson hit her with a bat; or (2) challenge the "misrepresentation" by telling the jury that Simpson hit J.W. with a *wiffleball* bat rather than a *baseball* bat. *See* ECF Doc. 1 at 5; ECF Doc. 1-1 at 2; *Strickland*, 466 U.S. at 687-88, 690. Trial counsel's decision not to object to J.W.'s testimony and the prosecutor's statements was an exercise of reasonable professional judgment, as J.W. was permitted to testify regarding matters upon which she had personal knowledge and prosecutors are permitted to summarize the testimony supporting the state's case. *See* Ohio Evid. R. 602 (witnesses must have personal knowledge); *State v. Potts*, 2016-Ohio-5555, at ¶88 (Ohio App. Ct. 2016) (holding that a prosecutor did not commit misconduct by summarizing testimony in his closing remarks). Further, Simpson has not shown that trial counsel's decision not to tell the jury that Simpson actually hit J.W. with a *wiffleball* bat was unreasonable. Here, counsel could have reasonably concluded that telling the jury the bat in question was a *wiffleball* bat would have undermined the credibility of the defense when: (1) testimony from J.W. and S.S. established that Simpson hit J.W. with a bat; (2) medical records indicated that J.W. was bruised from being

19

hit by a bat; and (3) Simpson has not pointed to any evidence indicating that the bat in question actually was a *wiffleball* bat. ECF Doc. 8-1 at 64-65 (¶¶6-7, 9, 10); *see Nichols v. United States*, No. 1:06-cv-183, 2009 U.S. Dist. LEXIS 28235, at *22-23 (E.D. Tenn., Apr. 1, 2009) (counsel's performance was not deficient when he conceded defendant's prior criminal record to preserve credibility with the jury).  Moreover, Simpson's defense seems to have been that he did not strike J.W. at all.  Telling the jury that the bat described in the witnesses' testimony was plastic (and therefore could not have caused the bruises she complained of) could readily have been taken as an admission that a bat *was* used – albeit a plastic one – to strike J.W.  Thus, Simpson cannot meet his burden to show that trial counsel's representation was deficient under the first *Strickland* prong.  *Strickland*, 466 U.S. at 687-88, 690; *Cobb*, 832 F.2d at 347.

Even if the court assumed that trial counsel unreasonably failed to object to J.W.'s allegedly misleading testimony, to object to the prosecutor's statements, or to tell the jury that Simpson had actually hit J.W. with a *wiffleball* bat, Simpson cannot show that he was prejudiced. Because J.W.'s testimony regarding her personal knowledge of Simpson hitting her with a bat was admissible and the prosecutor's statements summarizing that testimony were permissible, it is unlikely that any objection would had led to the court ordering the jury to disregard J.W.'s testimony or the prosecutor's comments.  *See* Ohio Evid. R. 602; *Potts*, 2016-Ohio-5555, at ¶88. And, even if counsel had told the jury that Simpson had actually hit J.W. with a *wiffleball* bat, the jury could have disregarded counsel's "correction" and concluded that Simpson had hit J.W. with a baseball bat based on J.W.'s testimony, S.S.'s testimony, and the bruising shown in J.W.'s medical records.  ECF Doc. 8-1 at 64-65 (¶¶6-10).  Moreover, even if J.W.'s testimony that Simpson hit her with a bat were disregarded, the jury could still have concluded that Simpson raped her because the jury could have reasonably concluded that the elements of "rape" under

Ohio Rev. Code § 2907.02(B) and "compelling prostitution" under Ohio Rev. Code § 2907.21(A) were met based on: (1) testimony that Simpson gave J.W. drugs; (2) testimony that Simpson hit J.W. with his hands and a belt, threatened J.W. with a belt, and beat up J.W. and other girls; (3) medical records showing that J.W. had bruises from being beaten; (4) that *See* Ohio Rev. Code § 2907.02(B) (2015) (defining rape as sex with an individual when the offender "substantially impairs the other person's judgment or control by administering any controlled substance . . . or by force, threat of force, or deception."); Ohio Rev. Code § 2907.21(A)(1) (2015) ("No person shall knowingly . . . compel another to engage in sexual activity for hire."); ECF Doc. 8-1 at 64-65 (¶¶6-10). Thus, Simpson cannot show that he was prejudiced by trial counsel's allegedly deficient representation with regard to J.W.'s testimony, the prosecutor's statements, or the failure to tell the jury that the bat J.W. referred to was a *wiffleball* bat. *Strickland*, 466 U.S. at 694; *Smith*, 888 F.2d at 404.

Accordingly, Simpson's Ground One claim would fail on the merits.

### b. Definition of "Coerce"

Simpson has also not shown that trial counsel was constitutionally ineffective when he did not object to the court's instruction that "coerce" meant "to compel by pressure, threat or other means" and did not require "force." *Strickland*, 466 U.S. at 687-88; ECF Doc. 1-1 at 3-4. A review of the statutes under which Simpson was convicted reveals that neither statute includes "coerce" as an element as an element of the offense. *See generally* Ohio Rev. Code § 2907.02 (2015) (rape); Ohio Rev. Code § 2907.21 (2015) (compelling prostitution). And Ohio's definition of "force or threat of force" – the element of rape under § 2907.02 which Simpson's Ground Two claim alleges was misstated by the trial court's definition of "coerce" – does not include "coerce." *See* Ohio Rev. Code § 2901.01(A)(1) ("'Force' means any violence,

compulsion, or constraint physically exerted by any means upon or against a person or thing."); *see also State v. Watson*, 2009-Ohio-2120, at ¶¶32-36 (Ohio App. Ct., May 7, 2009) (holding that "force or threat of force" includes force as defined under Ohio Rev. Code § 2901.01(A)(1) or "'creat[ing] the belief that physical force will be used if the victim does not submit.' *State v. Schaim*, 65 Ohio St. 3d 51[, 55 (1992).]"), *superseded in other part by statute*, Ohio Rev. Code § 2907.21(B), *as recognized in State v. Warren*, 2015-Ohio-3671, at ¶43 (Ohio App. Ct. 2015). However, some Ohio courts have held that, when a minor is the victim in a rape case, the meaning of "force or threat of force" is "'more relaxed' and may not require actual physical force or threat of actual physical force." *Watson*, 2009-Ohio-2120, at ¶37 (collecting cases).

Although he statutory language for compelling prostitution also does not include "coerce" as an element, the 1974 Committee Comment to Ohio Rev. Code § 2907.21(A)(1) states that "the compulsion used [to satisfy the "compel" element] may be force or the threat of force, duress, or *coercion of any kind*." Ohio Rev. Code § 2907.21(A)(1), Comm. Comment. (1974).  In that context, "coerce" does not necessarily include "force," but instead may be established by "'moral force'" or other influences that "'overcome the mind or volition of the [victim] so that [she] acted other than [she] ordinarily would have acted in the absence of those influences.'" *Watson*, 2009-Ohio-2120, at ¶¶41-46 (quoting *State v. Woods*, 48 Ohio St. 2d 127, 135-37 (1976), and also citing *State v. Wilkins*, 64 Ohio St. 2d 382 (1980)).  Moreover, in the 2011 amendment to § 2907.21, the Ohio Legislature further clarified that "compulsion" does not require physical force or the threat of physical force.  *See* Ohio Rev. Code § 2907.21(B) (2015) ("[T]he element 'compel' does not require that the compulsion be openly displayed or physically exerted.  The element 'compel' has been established if the state proves that the victims will was

overcome by force, fear, duress, or intimidation."); *see also Warren*, 2015-Ohio-3671, at ¶43 (stating that this definition was added in the 2011 amendments).

Because "coerce" was not an element of rape under Ohio Rev. Code § 2907.02, and because "coerce" within the meaning of "compel" under Ohio Rev. Code § 2907.21(A)(1) did not require "force," counsel could have reasonably concluded that objecting to the Court's definition of "coerce" would have been fruitless. *Strickland*, 466 U.S. at 687-88, 690; *Cobb*, 832 F.2d at 347. Here, the court's definition of "coerce" as it related to the "compelling prostitution" count was accurate, and Simpson has not pointed to any portion of the record indicating whether the court gave the instruction in relation to the rape count or the compelling prostitution count. *See* ECF Doc. 1 at 7; ECF Doc. 1-1 at 18-19; ECF Doc. 9 at 1-2. Thus, Simpson cannot meet his burden to establish that counsel's failure to object to the court's definition of "coerce" was defective performance under the first prong of *Strickland*. *Strickland*, 466 U.S. at 687-88, 690; *Cobb*, 832 F.2d at 347.

Even if the court were to assume that counsel's performed deficiently by failing to object to the trial court's definition of coerce, he cannot show that he was prejudiced. *Strickland*, 466 U.S. at 694; *Smith*, 888 F.2d at 404. Here, the evidence was sufficient for a reasonable jury to conclude that Simpson impaired J.W.'s ability to consent to sex with him by "force or threat of force" and "compelled" her to have sex for hire including: (1) J.W.'s testimony and medical records indicating that Simpson hit her with his hands, a belt, and a bat and that Simpson beat threatened her family to induce her to have sex with him and prostitute herself; (2) J.W.'s testimony that Simpson supplied her with drugs and made her prostitute herself to pay for the drugs medical records showing J.W.'s bruising from being beaten; (3) J.W.'s status as a minor; and (4) testimony from S.S. and N.S. corroborating that Simpson beat J.W. and other girls. ECF

Doc. 8-1 at 64-66 (¶¶5-10); *see also* Ohio Rev. Code §§ 2907.02(B), 2907.21(A)(1); *Watson*,

2009-Ohio-2120, at ¶¶32-46.  Thus, Simpson cannot show that, had counsel objected and the

trial court issued different instructions (defining force or threat of force) that might have been

necessary, the jury would not have convicted him of rape or compelling prostitution.  *Strickland*,

466 U.S. at 694; *Smith*, 888 F.2d at 404.

Accordingly, Simpson's Ground Two claim would fail on the merits.

**B.      Ground Three**

Simpson's Ground Three claim asserts that the jury "clearly lost its way" in concluding

that he was guilty of rape under Ohio Rev. Code § 2907.02(B) because there was insufficient

evidence to support the necessary elements of that conviction.  ECF Doc. 1 at 7; ECF Doc. 1-1 at

4-6.  Specifically, Simpson asserts that, although he admitted that he "regularly engaged in

consensual sex" with J.W., there was "no physical evidence support[ing] or corroborat[ing]

[J.W.'s] claim" that he anally raped her on September 10, 2015.  ECF Doc. 1-1 at 5.  Further,

Simpson contends that the jury should have discounted J.W.'s testimony that he had anally raped

her because: (1) J.W. was a crack cocaine addict; (2) J.W. bore ill-will toward Simpson; and (3)

DNA test results from a sample taken from J.W.'s anus indicated that the sample was "not

sufficient for comparison" to establish Simpson as a major contributor of the foreign DNA

found.  ECF Doc. 1-1 at 5; ECF Doc. 9 at 2-3.  Finally, Simpson states:

> the manifest unfairness of using a phrase like "additional data – not sufficient for
> comparison" to insinuate that the petitioner could be guilty of this crime needs to
> be mentioned.  That phrase could apply to every single human being on planet
> earth – and non-human beings, too.  We don't even know if it is human DNA.

ECF Doc. 9 at 3.

Warden Turner responds that Simpson's sufficiency-of-the-evidence claim was

procedurally defaulted because Simpson did not raise it before the Ohio Court of Appeals or

Ohio Supreme Court (on direct appeal) or in his Ohio App. R. 26(B) application.  ECF Doc. 8 at 15-19.  Warden Turner argues that, although Simpson raised a manifest-weight of the evidence claim before the Ohio Court of Appeals, that claim did not fairly present a sufficiency-of-the-evidence claim to the Ohio courts because the standards for manifest-weight and sufficiency-of-the-evidence claims are "qualitatively and quantitatively different."  ECF Doc. 8 at 15-19.  Thus, Warden Turner contends that a manifest-weight claim (available only under Ohio law) is not enough to raise the federal constitutional aspect of a sufficiency-of-the-evidence claim.  ECF Doc. 8 at 15-19.  Warden Turner notes that Simpson's brief supporting his appeal to the Ohio Supreme Court did not "fairly present" the claim because the substantive argument in Simpson's brief focused only on his ineffective-assistance-of-appellate-counsel claim.  ECF Doc. 8 at 19. Finally, Warden Turner argues that Simpson cannot overcome the procedural default of his Ground Three claim because he has not shown cause and prejudice or presented new, reliable evidence of actual innocence.  ECF Doc. 8 at 20.  Warden Turner also asserts that Simpson's Ground Three claim would fail on the merits.  ECF Doc. 8 at 34-37.

### 1.    Procedural Default

Because Simpson did not "fairly present" his sufficiency-of-the-evidence claim to the Ohio courts, his Ground Three claim was procedurally defaulted.

Warden Turner is correct that Simpson never raised a true sufficiency-of-the-evidence claim before the Ohio Court of Appeals or Ohio Supreme Court, whether on direct appeal, in a post-conviction motion, or in his Ohio App. R. 26(B) motion to reopen his direct appeal.  ECF Doc. 8-1 at 19, 25-27, 74-79, 93-95, 112-20.  Nevertheless, it is unclear whether Simpson could use the manifest-weight claim he raised on direct appeal to the Ohio Court of Appeals to evade the procedural default of his sufficiency-of-the-evidence claim.

Warden Turner argues that Simpson's manifest-weight claim does not evade the procedural default of his sufficiency-of-the-evidence claim because the standard of review for the two types of claim are qualitatively and quantitatively different.  ECF Doc. 8 at 15-19. Warden Turner's argument is alluring – numerous Ohio court decisions and a 2012 opinion from the Southern District of Ohio support it.  *See* ECF Doc. 9 at 15-19 (citing *State v. Thompkins*, 78 Ohio St. 3d 380 (1997); *State v. McKnight*, 107 Ohio St. 3d 101 (2005); *State v. Monroe*, 105 Ohio St. 3d 384 (2005); *State v. Scott*, 1010 Ohio St. 3d 31 (2004); *State v. Miller*, 96 Ohio St. 3d 384 (2002); *State v. Nields*, 93 Ohio St. 3d 6 (2001); *Freeman v. Warden, Belmont Corr. Inst.*, No. 2:09-cv-317, 2012 U.S. Dist. LEXIS 126445 (S.D. Ohio, Sept. 6, 2012)).  But the Sixth Circuit's decision in *Nash v. Eberlin* stands in the other corner.  258 F. App'x 761 (6th Cir. 2007) (unpublished).  In *Nash*, the Sixth Circuit observed that because the "determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence" it was appropriate for a federal habeas court to review an arguably defaulted sufficiency-of-the-evidence claim.  *Id.* at 765.

Luckily, this court need not decide whether to follow the Sixth Circuit's unpublished decision or the Ohio courts' and Southern District's decisions.  Even if the court took the *Nash* approach, Simpson still failed to "fairly present" his manifest-weight claim in his appeal to the Ohio Supreme Court.  *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *Baston*, 282 F. Supp. 2d at 661; *McMeans*, 228 F.3d at 681.  Despite mentioning his manifest-weight claim in a heading in the memorandum filed with the Supreme Court of Ohio, Simpson did not "fairly present" the claim because his memorandum did not develop any substantive argument supporting it.[6]  *See* ECF Doc. 8-1 at 74-79; *cf. Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir.

---

[6] Simpson's omission of *any argument at all* supporting his manifest-weight claim before the Ohio Supreme Court is ironic, given that he spent the entirety of his memorandum arguing that appellate

2004) (claim not fairly presented when petitioner's only citation to federal authority appeared in a section heading and petitioner "failed to develop any cogent arguments regarding those rights beyond naked assertions that they were violated.").  Thus, because Simpson procedurally defaulted his manifest-weight claim, he cannot use his manifest-weight claim to evade the procedural default of his sufficiency-of-the-evidence claim under *Nash.*

As with his Ground One and Ground Two claims, Simpson cannot overcome his procedural default.  Simpson has not argued that he had any cause for failing to fairly present an evidence sufficiency claim on direct appeal at all or a manifest-weight claim on direct appeal to the Ohio Supreme Court.  And he has not argued any cause for not raising a sufficiency-of-the-evidence claim (or even an ineffective assistance of appellate counsel for failing to raise an evidence sufficiency claim on direct appeal) in his Ohio App. R. 26(B) application to reopen. *See generally* ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 9.  Even if he had, Simpson's self-representation before the Ohio Supreme Court and in his Ohio App. R. 26(B) proceedings would preclude him from pointing to some external factor beyond his control that prevented him from raising those claims.  *Coleman,* 501 U.S. at 750; *see, e.g., Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (petitioner who proceeded *pro se* before the Ohio Supreme Court could not point to inexperience and ignorance of legal procedure as cause).  And, yet again, Simpson has not presented any new, reliable evidence not presented at trial demonstrating that he is factually innocent and that a fundamental miscarriage of justice would occur if this court does not entertain his sufficiency-of-the-evidence claim.  *Lundgren,* 440 F.3d at 764; *Bousley,* 523 U.S. at 623; *Schlup,* 513 U.S. at 324; *see generally* ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 9; *see also*

---

counsel was ineffective for failing to include record and case citations supporting his argument before the Ohio Court of Appeals.

Section V.A.1. n.5, *supra*.  Thus, Simpson cannot overcome the procedural default of his Ground Three claim.

Because Simpson cannot overcome the procedural default of his Ground Three claim, I recommend that the claim be dismissed.

## 2. Merits

Simpson's Ground Three claim would also fail on the merits.  "The Fourteenth Amendment's Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt." *Thomas v. Stephenson*, 898 F.3d 693, 702 (6th Cir. 2018) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  When a criminal defendant alleges that the evidence adduced at trial was insufficient to support his conviction, the court must determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On habeas review, this inquiry is further filtered through 28 U.S.C. § 2254(d)'s deferential standard. *Davis v. Lafler*, 658 F.3d 525, 531-35 (6th Cir. 2011) (*en banc*) (explaining that a state court's decision in a federal habeas sufficiency-of-the-evidence challenge receives "double deference" – first, to the jury's verdict, and second, to the state court's consideration of the verdict); *see also* 28 U.S.C. § 2254(d); *Harrington*, 526 U.S. at 88, 98-99, 102-03; *Schriro*, 550 U.S. at 473. Thus, a federal habeas court reviewing a sufficiency-of-the-evidence claim must determine whether the state appellate court reasonably concluded that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  The sufficiency of the evidence determination is based on all of the evidence, even evidence erroneously admitted. *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).

As discussed above, rape under Ohio Rev. Code § 2907.02(B) required the state to prove that the Simpson had sex with J.W. after he "substantially impair[ed J.W.'s] judgment or control by administering a controlled substance . . . surreptitiously or by force, threat of force, or deception." Ohio Rev. Code § 2907.02(B); *see also Watson*, 2009-Ohio-2120, at ¶36 ("[T]hreat of force" means "creat[ing] the belief that physical force will be used if the victim does not submit.").  And compelling prostitution under Ohio Rev. Code § 2907.21(A)(1) required the state to prove that Simpson "compel[led J.W.] to engage in sexual activity for hire." Ohio Rev. Code § 2907.21(A)(1).  Here, the "compel" element did not require the state to show "openly displayed or physical[]" compulsion, but could be established by "force, fear, duress, or intimidation." Ohio Rev. Code § 2907.21(B); *see also Warren*, 2015-Ohio-3671, at ¶¶44-54 (testimony that a defendant introduced the victim to heroin, manipulated her to engage in prostitution to provide him with money in exchange for heroin, and hit her when she did not give him the prostitution-derived money supported a finding that the defendant compelled prostitution).

We can readily conclude that any rational trier of fact could have found beyond a reasonable doubt that Simpson committed the essential elements of rape and compelling prostitution.  *Harrington*, 562 U.S. at 98-99; *Jackson*, 443 U.S. at 319; *Schriro*, 550 U.S. at 473; *Davis*, 658 F.3d at 531-35; 28 U.S.C. § 2254(d).  The prosecution presented witness testimony which, when considered in a light most favorable to prosecution, proved beyond a reasonable doubt that: (1) J.W. was 15 years old at all relevant times; (2) J.W. was addicted to crack cocaine, which Simpson supplied to her; (3) Simpson would not allow J.W. to leave his apartment without supervision; (4) Simpson made J.W. and S.S. prostitute themselves for drugs or to get him money to pay for drugs; (5) Simpson hit J.W. and other girls with his hands, a bat,

or a belt when they did not comply with his demands; (6) J.W. complied with Simpson's demands for sex to avoid being hit; (7) Simpson beat J.W. on September 9, 2005, because he thought "she had not properly responded to his friend;" (8) Simpson had vaginal and anal sex with J.W. on September 10, 2005, even when she objected to sex, was "hysterical," and was in pain/injured by it. ECF Doc. 8-1 at 63-66 (¶¶4-9). Further, DNA testing showed that Simpson had contributed to the vaginal sample taken from J.W.; medical records showed bruising consistent with J.W.'s testimony that Simpson beat her and had vaginal/anal tearing consistent with rape; and a recording of a call Simpson placed while in custody showed that he was trying to locate and intimidate J.W. at an area women's shelter. ECF Doc. 8-1 at 66-67 (¶¶10, 12).

Based on this evidence, any rational trier of fact and the Ohio Court of Appeals could have reasonably determined that the trial evidence was sufficient to prove that: (1) Simpson had sex with J.W. "on or about" September 10, 2015; (2) to induce sex, Simpson substantially impaired J.W.'s control by using force or the threat of force; and (3) Simpson compelled J.W. to engage in prostitution by manipulating her drug addiction and by hitting or threatening to hit her with either his hands, a bat, or a belt. Ohio Rev. Code §§ 2907.02(B), 2907.21(A)(1), (B); *Watson*, 2009-Ohio-2120, at ¶36; *Warren*, 2015-Ohio-3671, at ¶¶44-54. Further, to the extent Simpson argues that the indictment's language – "on or about September 10, 2015" – required the state to prove that the offenses occurred precisely within the 24-hour period occupied by the calendar date September 10, 2015, his argument is unavailing. *See* ECF Doc. 1-1 at 4 (using phrases such as "on the day specified," "that day . . . September 10," and "on the day specified in the indictment"). When the indictment qualifies a date by stating that the offense occurred "on or about" that date, it is sufficient for the evidence to show that the offense occurred "within a few weeks" or days of the date specified. *See United States v. Heard*, 443 F.2d 856, 859-60 (6th

Cir. 1971) (holding that an indictment alleging that a crime occurred "on or about July 23, 1966" was sufficient to give a defendant notice when the evidence later revealed that the offense had actually occurred on July 21, 1966) (citing *Yaw v. United States*, 228 F.2d 382, 383 (9th Cir. 1955); *United States v. Tramaglino*, 197 F.2d 928 (2d Cir. 1952); *Thompson v. United States*, 283 F. 895 (3d Cir. 1922); and *Ledbetter v. United States*, 170 U.S. 606, 612 (1898)).  Thus, Simpson has not carried his burden to show that any rational trier of fact or the state appellate court could not have reasonably found the essential elements of rape and compelling prostitution beyond a reasonable doubt.  *Harrington*, 562 U.S. at 98-99; *Jackson*, 443 U.S. at 319; *Schriro*, 550 U.S. at 473; *Davis*, 658 F.3d at 531-35; 28 U.S.C. § 2254(d).

Accordingly, even if the Court considered Simpson's Ground Three claim on the merits, Simpson could not show that the evidence adduced at trial was insufficient to support his rape and compelling prostitution convictions.

### C.    Ground Four

Simpson's Ground Four claim asserts that his appellate counsel provided constitutionally ineffective assistance because they failed to comply with Ohio App. R. 16(A)'s requirement that claims on appeal be supported with "citations to authorities, statutes, and parts of the record upon which the appellant relies."  ECF Doc. 1 at 10; ECF Doc. 1-1 at 6-7.  He asserts that Counsel's deficient performance prejudiced him because, had counsel complied with Ohio App. R. 16(A), his manifest-weight claim would have succeeded on the merits.  ECF Doc. 1-1 at 6-7.

Warden Turner responds that Simpson's Ground Four claim is procedurally defaulted because he failed to raise it in an appeal to the Ohio Supreme Court from the denial of his Ohio App. R. 26(B) application to reopen his appeal.  ECF Doc. 8 at 21-23.  Warden Turner notes that, although raised the claim in his direct appeal to the Ohio Supreme Court *before* he filed his Ohio

App. R. 26(B) application, his direct appeal did not fairly raise the issue because ineffective-assistance-of-appellate-counsel claims must be raised first in an Ohio App. R. 26(B) application. ECF Doc. 8 at 21.  Further, Warden Turner argues that Ohio courts regularly enforce the rule requiring ineffective-assistance-of-appellate-counsel claims be first raised in an Ohio App. R. 26(B) application and that it is an independent and adequate state ground for denying relief. ECF Doc. 8 at 21-22.  Warden Turner also argues that Simpson cannot show cause and prejudice to overcome his default, and his claim does not rely on new evidence of actual innocence.[7]  ECF Doc. 8 at 22-23.  Further, Warden Turner asserts that Simpson's Ground Four claim is meritless because Simpson cannot show that counsel's failure to cite the record and caselaw prejudiced him because the Ohio Court of Appeals reviewed Simpson's manifest-weight claim on the merits rather than dismissing it for failure to cite the record and caselaw.  ECF Doc. 8 at 37-40.

Simpson replies that *State v. Davis*, 119 Ohio St. 3d 422, 426-27 (2008) – one of the cases Warden Turner relies upon in arguing that Simpson was required to present his ineffective-assistance-of-appellate-counsel claim first in an Ohio App. R. 26(B) application – does not say that he would be procedurally barred from raising the claim in a habeas petition if he failed to comply with that rule.  ECF Doc. 9 at 3.  Further, Simpson argues that his claim should be reviewed on the merits because appellate counsel's failure to cite the trial record in his appellate brief "doomed" his appeal and clearly deprived him of his right to effective assistance of counsel.  ECF Doc. 9 at 4.

---

[7] In making his cause-and-prejudice argument, Warden Turner indicates that Simpson cannot show prejudice because he "pled [*sic*] guilty to the offenses of conviction."  ECF Doc. 8 at 23.  Simpson correctly notes, however, that he *did not* plead guilty.  ECF Doc. 9 at 3; *see also* ECF Doc. 8-1 at 8 (verdict).

### 1.    Procedural Default

Simpson's Ground Four claim was not procedurally defaulted.  On the one hand, Warden Turner is correct that: (1) Ohio App. R. 26(B) creates the ordinary procedure through which Ohio criminal defendants may present an ineffective-assistance-of-appellate-counsel claim; and (2) Simpson failed to appeal the denial of his Ohio App. R. 26(B) claim to the Ohio Supreme Court.  *See State v. Davis*, 119 Ohio St. 3d 422, 427 (2008) ("App. R. 26(B) creates a special procedure for a thorough determination of a defendant's allegations of ineffective assistance of counsel.  The rule creates a separate forum where persons with allegedly deficient appellate counsel can vindicate their rights.").  Thus, had Simpson raised his ineffective-assistance-of-appellate-counsel claim only in his Ohio App. R. 26(B) proceedings, it would be clear that Simpson failed to "fairly present" the claim to the Ohio Supreme Court and the claim would be procedurally defaulted.  *Gerth*, 938 F.3d at 826; *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681; *Baston*, 282 F. Supp. 2d at 661; *Scott*, 209 F.3d at 865-68.

But our inquiry is more complicated because Simpson did raise an ineffective-assistance-of-appellate-counsel claim in his direct appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 74-79.  Thus, Simpson's Ground Four claim is procedurally defaulted only if: (1) presenting the claim on direct appeal to the Ohio Supreme Court ran afoul of an Ohio procedural rule; (2) the Ohio Supreme Court regularly enforces that rule; and (3) that rule was an independent and adequate estate grounds for denying review of a constitutional claim.  *Maupin v. Smith*, 785 F.2d at 138; *Williams¸* 260 F.3d at 693; *Gerth*, 938 F.3d at 829-30.

Because Simpson was permitted to raise an ineffective-assistance-of-appellate-counsel claim on direct appeal to the Ohio Supreme Court, Warden Turner's *Maupin* argument fails at the first step.  In *State v. Murnahan*, the Ohio Supreme Court held that a criminal defendant

33

could raise an ineffective-assistance-of-appellate-counsel claim either in an application for reconsideration to the court of appeals or in a direct appeal to the Ohio Supreme Court under OHIO CONST. art. IV, § 2(B)(2)(a)(iii).[8] 63 Ohio St. 3d 60, 64-67 (1992). The court also directed the advisory committee on rules to codify a provision for litigating ineffective-assistance-of-appellate-counsel claims after direct appeal was concluded to avoid the unjust application of *res judicata*, ultimately resulting in the creation of Ohio App. R. 26(B). *Id.* at 66 n.6. Citing *Davis*, 119 Ohio St. 3d at 426-27, Warden Turner asserts that the creation of Ohio App. R. 26(B) abrogated *Murnahan* and obligates criminal defendants to raise ineffective-assistance-of-appellate-counsel claims for the first time in an application to reopen. ECF Doc. 8 at 20-21. Warden Turner says that Simpson's decision to present the claim on direct appeal, therefore, could not "exhaust" the claim for federal habeas review. ECF Doc. 8 at 21.

But Simpson is correct – *Davis* did not say that. *See* ECF Doc. 9 at 3-4. Instead, *Davis* said:

> App. R. 26(B) . . . established appellate courts as the venue in which defendants should being delayed claims of ineffective assistance of appellate counsel.
>
> * * *
>
> [¶20] "The provisions of App. R. 26(B) were specifically designed to provide for a specialized type of postconviction process. The rule was designed to offer defendants a separate collateral opportunity to raise ineffective-appellate-counsel claims beyond the opportunities that exist through traditional motions for reconsideration and discretionary appeals to our court or the Supreme Court of the United States." *Morgan v. Eads*, 104 Ohio St. 3d 142 (2004).
>
> [¶21] The clear intent of App. R. 26(B) is for the appellate court to function as the trier of fact in determining whether the defendant has demonstrated a genuine issue as to the ineffectiveness of his appellate counsel. This court's Rules of

---

[8] In 1992, when *Murnahan* was decided, OHIO CONST. art. IV, § 2(B)(2)(a)(iii) stated that "[t]he Supreme Court shall have appellate jurisdiction . . . [i]n appeals from the courts of appeals as a manner of right in . . . [c]ases involving questions arising under the constitution of the United States or of this state." OHIO CONST. art. IV, § 2(B)(2)(a)(iii) (1992). At the time of Simpson's appeal to the Ohio Supreme Court, that provision was found in OHIO CONST. art. IV, § 2(B)(2)(a)(ii) (2018).

Practice recognize the appellate court's role in App. R. 26(B) matters, allowing the lower courts to consider App. R. 26(B) applications even after an appeal to this court is perfected:

[¶22] "After an appeal is perfected from a court of appeals to the Supreme Court, the court of appeals is divested of jurisdiction, except to take action in aid of the appeal, to rule on an application timely filed with the court of appeals pursuant to App. R. 26, or to rule on a motion to certify a conflict under Article IV, Section 3(B)(4) of the Ohio Constitution." (Emphasis added.)  S. Ct. Prac. R. II(2)(D)(1).

119 Ohio St. 3d at 425-27 (¶¶13, 20-22).  This language plainly indicates that Ohio App. R. 26(B) is a procedure for *delayed* ineffective-assistance-of-appellate-counsel claims, and that the Ohio Court of Appeals is the venue for determining the facts regarding *whether the defendant has met his burden to show that the claim should be permitted to proceed to a merits adjudication*.  It *does not* indicate that Ohio App. R. 26(B) divested the Ohio Supreme Court of its Ohio constitutional jurisdiction to hear ineffective-assistance-of-appellate-counsel claims in the first instance on direct appeal under OHIO CONST. art. IV, § 2(B)(2)(a).  *See generally Davis*, 119 Ohio St. 3d at 425-27.  If anything, *Davis* expressly indicates that "traditional . . . discretionary appeals" to the Ohio Supreme Court remain a proper venue for raising ineffective-assistance-of-appellate-counsel claims.  *Davis*, 119 Ohio St. 3d at 426.  Therefore, when Simpson raised his ineffective-assistance-of-appellate-counsel claim on direct appeal to the Ohio Supreme Court he both: (1) complied with the state procedural rules for presenting that claim (*i.e.*, OHIO CONST. art. IV, § 2(B)(2)(a) and *Murnahan*); and (2) fairly presented the claim for adjudication by the Ohio Supreme Court.  *Gerth*, 938 F.3d at 826; *Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.

Because Simpson properly presented his ineffective-assistance-of-appellate-counsel claim on direct appeal to the Ohio Supreme Court and the Ohio Supreme Court had a fair opportunity to address that claim on discretionary appeal, Simpson's Ground Four claim was not

procedurally defaulted.  Accordingly, I recommend that the court proceed to consider Simpson's Ground Four claim on the merits.

### 2.      Merits

Claims of ineffective assistance of appellate counsel are subject to the *Strickland* test. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see also Smith*, 888 F.2d at 405 n.1 (6th Cir. 1989); *Bowen v. Foltz*, 763 F.2d 191, 194 (6th Cir. 1985).  As discussed above, to support a claim that counsel was constitutionally ineffective a petitioner must show that: (1) counsel performed unreasonably; and (2) the petitioner was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687, 694; *see* Section V(A)(2), *supra*.  The petitioner must satisfy both parts of the test and the reviewing court is not required to evaluate a counsel's non-prejudicial performance.  *Id.* at 697; *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004) ("We do not need to address the question of competence, however: 'if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudiced . . .'" (quoting *Strickland*, 466 U.S. at 697)).

Simpson's ineffective-assistance-of-appellate-counsel claim fails on the merits because Simpson has not shown that the Ohio Supreme Court could not have reasonably concluded that the deficient performance did not prejudice him.  *Strickland*, 466 U.S. at 687, 694, 697; *Baez*, 371 F.3d at 321.  Here, the Ohio Court of Appeals noted that it could simply disregard Simpson's manifest-weight claim because appellate counsel had failed to comply with Ohio App. R. 16(A)(6) and (D)'s requirement that an appellate support his argument with citations to the record and authority.  ECF Doc. 8-1 at 68 (¶15).  Nevertheless, the Ohio Court of Appeals decided to overlook the deficiency and considered Simpson's manifest-weight claim on the merits.  ECF Doc. 8-1 at 68 (¶¶16-20).  Because the Ohio Court of Appeals decided Simpson's manifest-weight claim on the merits and did not disregard it under Ohio App. R. 16(A)(6) and

(D), Simpson cannot show that appellate counsels' failure to comply with Ohio App. R. 16(A)(6) and (D) would have resulted in a different outcome for his appeal. *Strickland*, 466 U.S. at 694; *Smith*, 888 F.2d at 404-405 n.1. Therefore, even if the court assumed for the sake of argument that counsel's performance was deficient, Simpson's Ground Four claim is meritless because he has not met the prejudice prong of *Strickland*. *Strickland*, 466 U.S. at 687, 694, 697; *Baez*, 371 F.3d at 321.

Accordingly, I recommend that the Court deny Simpson's Ground Four claim as meritless.

### D.    Ground Five

Simpson argues in his final claim that a July 18, 2017, letter by witness S.S. indicates that the prosecutor told her what to say when she testified and that her testimony was false. ECF Doc. 1-1 at 7. Simpson contends that the allegedly false testimony prejudiced him because the prosecutor and the jury relied on it in finding him guilty of rape and compelling prostitution. ECF Doc. 1-1 at 7-8. Further, Simpson asserts that the use of false testimony violated his right to a fair trial under the Sixth Amendment and his right to due process under the Fifth and Fourteenth Amendments. ECF Doc. 1-1 at 8.[9]

Warden Turner responds that Simpson's Ground Five claim is procedurally defaulted because he did not raise, but could have raised, the claim in his January 10, 2018, state postconviction petition. ECF Doc. 8 at 23. Further, Warden Turner argues that Simpson cannot overcome the procedural default of his Ground Five claim because he: (1) cannot show cause or prejudice; and (2) he has not presented any new evidence of actual innocence. ECF Doc. 8 at 24. Finally, Warden Turner asserts that Simpson's Ground Five claim would fail on the merits

---

[9] Simpson has not addressed his Ground Five claim in his Traverse. *See generally* ECF Doc. 9.

because Simpson has not shown that S.S.'s testimony was actually false, material, or that the state knew it was false.  ECF Doc. 8 at 41.

### 1.    Procedural Default

Warden Turner is correct that Simpson's Ground Five claim is procedurally defaulted. *Gerth*, 938 F.3d at 826; *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681.  Because Simpson's claim is based on a letter sent in July 2017, the basis for his claim was available to him when he filed his June 10, 2018, postconviction petition.  ECF Doc. 1-2; ECF Doc. 8-1 at 92-95.  Nevertheless, Simpson did not include the claim in his postconviction petition.  ECF Doc. 8-1 at 92-95.  Because Simpson did not include the claim in his postconviction petition and the time for raising the claim before the Ohio courts has long passed, Simpson failed to "fairly present" the claim to the Ohio courts and the claim is procedurally defaulted.  *Gerth*, 938 F.3d at 826; *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 848; *McMeans*, 228 F.3d at 681; *see also* Ohio Rev. Code § 2953.21(A)(2) (criminal defendant must file postconviction petition within 365 days after judgment is final).

Simpson has not argued cause or prejudice to excuse his procedural default, or that he has new evidence of actual innocence which would make an application of the procedural bar manifestly unjust.  See generally ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 9; *Coleman*, 501 U.S. at 750; *Lundgren*, 440 F.3d at 764.  Because Simpson represented himself in his postconviction proceedings and because he had S.S.'s July 2017 letter at the time he filed his postconviction petition, Simpson cannot point to an external factor that prevented him from raising the claim in his postconviction petition.  ECF Doc. 1-2; ECF Doc. 8-1 at 92-95; *Coleman*, 501 U.S. at 750. Moreover, as discussed in Section V(A)(1), n.5, *supra*, the July 2017 letter is not new, reliable evidence of actual innocence and, therefore, would not render application of the procedural bar

38

manifestly unjust. *Coleman*, 501 U.S. at 750; *Lundgren*, 440 F.3d at 764; *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324; *In re Byrd*, 269 F.3d at 577. Thus, Simpson cannot overcome the procedural default of his Ground Five claim.

I recommend that Simpson's Ground Five claim be dismissed as procedurally defaulted.

### 2. Merits

Even if the court were to consider the merits of Simpson's Ground Five claim, it would still fail. "A false-testimony claim is cognizable on federal habeas review because the 'deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice.'" *Abdus-Samad v. Bell*, 420 F.3d 614, 625 (6th Cir. 2005) (quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972)). To prevail on such a claim, the petitioner "must show: (1) that the prosecution presented false testimony; (2) that the prosecution knew was false; and (3) that was material." *Id.* at 625-26. Moreover, "[t]he statement must be 'indisputably false' rather than 'merely misleading.'" *Id.* at 626 (quoting *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000)).

Here, Simpson cannot show that the July 2017 letter from S.S. establishes that S.S.'s testimony was false, that the prosecutor knew S.S. gave false testimony, or that S.S.'s allegedly false testimony was material. *Abdus-Samad*, 420 F.3d at 625-26; *Giglio*, 405 U.S. at 153; *Byrd*, 209 F.3d at 517-18. Nowhere in the July 2017 letter did S.S. state that the prosecutor told her what to say when she testified or that any of her testimony at trial was false. *See generally* ECF Doc. 1-2. And Simpson is incorrect that S.S.'s statement – "Just because then I wasn't screaming at you for what happen doesn't mean a thing. I was just going with the flow, that's probably why your [*sic*] sitting with confusion." – implied that the prosecutor told her to give false testimony. ECF Doc. 1-2 at 1. Instead, S.S. expressly stated that "nobody put anything in

my head," and indicates that she did not scream at Simpson during the trial because she had learned to control her emotions and "let go." ECF Doc. 1-2 at 1 ("I learned to let go and be happy. S***, I grew up in a[n] abusive home, I knew how to handle my feelings and pretend everything was ok."). Thus, Simpson has not pointed to any evidence showing that S.S.'s testimony was false or that the prosecutor knew the testimony was false. *Abdus-Samad*, 420 F.3d at 625-26; *Giglio*, 405 U.S. at 153; *Byrd*, 209 F.3d at 517-18. Moreover, Simpson cannot show that S.S.'s testimony was material because the jury could have relied on a vast quantity of other evidence in the trial record – including J.W.'s and N.S.'s testimony – to find Simpson guilty of both rape and compelling prostitution. *See* Section V(B)(2), *supra* (finding that sufficient evidence existed to support Simpson's rape and compelling prostitution convictions).

Because Simpson has failed to show that S.S.'s trial testimony was false, that the prosecutor knew it was false, and that the allegedly false testimony was material, his Ground Five claim would fail on the merits.

## VI.  Certificate of Appealability

### A.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not

require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.    Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."  *Id.* at 486.  If the Court accepts my recommendations, Simpson will not be able to show that the Court's rulings on his procedurally defaulted and meritless claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

41

## VII.    Recommendations

I recommend that Simpson's Ground One, Two, Three, and Five claims be DISMISSED as procedurally defaulted; that his Ground Four claim be DENIED as meritless; and that his petition for writ of habeas corpus be DENIED.  I further recommend that Simpson not be granted a certificate of appealability.

Dated: May 1, 2020

Thomas M. Parker
United States Magistrate Judge

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).